IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL LANGREDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 13-cv-0371 |
| | ) | |
| FREEMAN EXPOSITIONS, INC., | ) | Judge John Z. Lee |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Daniel Langreder ("Langreder") brings age discrimination and retaliation claims against Defendant Freeman Expositions, Inc. ("Freeman") under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq*. Freeman moves for summary judgment against Langreder, arguing principally that Langreder suffered no adverse employment action and that Langreder has not identified any younger employees who were treated more favorably. For his part, Langreder argues that genuine disputes of material fact remain as to these issues, thereby precluding summary judgment. For the reasons provided herein, the Court grants summary judgment in Freeman's favor.

**Factual Background**

Langreder is a member of the Carpenter's Union. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 5. As a member of the Union, Langreder must work at least 1,000 hours per calendar year in order to maintain his Union benefits. *See* Def.'s LR 56.1(a)(3) Stmt. ¶ 8. Freeman is a national company that constructs and dismantles trade

1

show exhibits at various locations. *See id.* ¶ 6. Through the Union, Langreder worked for Freeman in Chicago from 1986 through 2010. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 5; Pl.'s LR 56.1(b)(3)(C) Stmt.,[1] Ex. A, Langreder's Work History. However, during his last few years at Freeman, Langreder's hours declined. *See* Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. A, Langreder's Work History.

The parties dispute the reason for this decline in hours. Langreder believes the decline in his hours resulted from age discrimination. *See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 1. Freeman, by contrast, claims the economic slowdown resulted in a decrease in hours overall. *See* Def.'s LR 56.1(a)(3) Stmt. ¶ 17.

In any event, Langreder became concerned that the decline in his hours would make it difficult to meet the requirement to receive health benefits. *See* Def.'s Mot. Summ. J., Ex. C, Langreder Dep. at 79:13–22. Consequently, he decided to retire from the Union to preserve those health benefits. *Id.*

On February 23, 2011, Langreder's last day with Freeman in Chicago, Langreder spoke with his union foreman, Ron Michelon. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 20. Freeman characterizes the conversation as a verbal altercation. *See* Def.'s LR 56.1(a)(3) Stmt. ¶ 21. Langreder disagrees, characterizing it as a "conversation." Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 21. In any event, the substance of the exchange is undisputed. Langreder admits that he challenged Michelon, saying "you f***ing with me all of last year," "you ain't man enough to tell me the truth,"

---

[1] The Court construes portions of Langreder's Reply as his Local Rule 56.1(b)(3)(C) Statement of Additional Facts. Langreder did not file a separately identified Statement of Additional Facts.

and "take your skirt off and be a man." Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. N, Pl.'s Aff. ¶ 1. Langreder remembers that Michelon responded "f*** you," and "I will knock you out right now mother***er," after instructing Langreder to go home. *Id.*

Shortly after Langreder's conversation with Michelon, Langreder spoke with Mary Beth Knight, Freeman's human resources representative. *See* Def.'s Mot. Summ. J., Ex. C, Langreder Dep., at 76:19–77:4. During that conversation, to make the situation "go away," Langreder said he would work 250 hours per quarter but only at out-of-town trade shows.[2] *Id.* at 76:19–77:4. That same day Langreder received threatening phone calls on his home voicemail. *See id.* at 73:13–24. Langreder reported the phone calls to the FBI after speaking with Mary Beth Knight but never informed the police, despite suggestions by Knight and the FBI that he do so. *Id.* at 73:25–74:15; Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. N, Pl.'s Aff.

With respect to post-retirement work, Freeman claims that Langreder could not work for them in Chicago "because [Langreder] had retired from the . . . Union," and therefore "[he] could only work as a carpenter outside of the area covered by the collective bargaining agreement." Def.'s Mot. Summ. J. 10. However, Freeman did not provide any evidence to support this contention in its LR 56.1 Statement of Facts; nor does the Collective Bargaining Agreement appear to restrict Langreder in this manner. *Cf.* Def.'s Mot. Summ. J., Ex. H, Collective Bargaining Agreement.[3]

---

[2] Langreder did work for Freeman twice more, in April 2011 and April 2012, at a Houston location. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 23–24.

[3] The Seventh Circuit "has long held that a district court is not required to scour the record looking for factual disputes or to scour the party's various submissions to piece together appropriate argument . . . . A court need not make the lawyer's case." *Diadenko v.*

3

In contrast, Langreder did claim in his deposition that he could continue to work for Freeman in Chicago as long as he reported the work to the Union and stopped his pension benefits. *See* Def.'s Mot. Summ. J., Ex. C, Langreder Dep. at 68:7–13. However, Langreder also does not provide any support for this statement. That said, Mike Benson, director of show site operations, confirmed that Freeman does occasionally hire retirees. *See* Def.'s Mot. Summ. J. Ex. D, Benson Dep. at 14:7–10.

On November 18, 2011, following Langreder's retirement and altercation with Michelon, Langreder filed a charge with the Equal Employment Opportunity Commission. *See* Pl.'s Compl., Ex. 1, 11/18/11 EEOC Charge. On November 18, 2012, the Commission issued its right-to-sue letter. *See* Pl.'s Compl., Ex. 2, EEOC Right to Sue Notice. Langreder filed his complaint in federal court on March 27, 2013.

**<u>Legal Standard</u>**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *McCleskey v. DLF Constr., Inc.*, 689 F.3d 677, 679 (7th Cir. 2012). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

*Folino*, 741 F.3d 751, 757 (7th Cir. 2013). Consequently, the Court has not exhaustively examined the Collective Bargain Agreement in an attempt to make this argument for Freeman.

4

"The burden of establishing the nonexistence of a genuine issue is on the party moving for summary judgment." *Celotex*, 477 U.S. at 320. The nonmovant is required to "go beyond the pleadings and by her own affidavits," or other evidence in the record "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

"[A] party opposing summary judgment may not rest upon mere allegations or denials . . . instead it is incumbent upon them to introduce affidavits or other evidence setting forth specific facts showing a genuine issue for trial." *Anders v. Waste Mgmt. of Wis., Inc.*, 463 F.3d 670, 675 (7th Cir. 2006). At the summary judgment stage, "saying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact[.]" *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510–11 (7th Cir. 2010).

## Local Rule 56.2

On September 12, 2014, Freeman filed its initial Motion for Summary Judgment. However, Langreder is proceeding *pro se*, and Freeman failed to include the Notice to Pro Se Litigants Opposing Summary Judgment as required by Local Rule 56.2. On March 9, 2015, Freeman requested leave to re-file the Motion for Summary Judgment, and this Court granted the request. *See* 3/10/15 Min. Entry. Langreder argues in his response that summary judgment should be denied because of Freeman's failure to comply with the Local Rules. *See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 18.

5

The Seventh Circuit has stated, "[A] local rule of a federal district court is written by and for district judges to deal with the special problems of their court, and we are disposed therefore to give a district judge's interpretation of his court's local rules considerable weight." *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 810 (7th Cir. 2005) (internal quotations omitted). Local Rule 56.2 arose from a concern that *pro se* plaintiffs would be prejudiced by their lack of sophistication with regard to pleadings. *See Glaus v. Anderson*, 408 F.3d 382, 389 (7th Cir. 2008). However, Langreder was provided with another opportunity to respond to Freeman's motion for summary judgment after receiving the notice as a part of Freeman's renewed filing. Freeman did not alter the substance of its motion for summary judgment, and Langreder has not significantly altered his response to Freeman's motion. As such, Langreder did not suffer any prejudice by Freeman's original failure to issue the Local Rule 56.2 Notice.

Additionally, the Court has interpreted Langreder's own filings generously consistent with his *pro se* status. Because Langreder's filings indicate that notice has not affected his response to summary judgment, the Court will not sanction Freeman by denying its motion for summary judgment on this basis. *See Cannon v. Burkybile*, 2002 WL 448988, at *2 (N.D. Ill. Mar. 22, 2002) ("Most of the essential information . . . is contained in defendants' brief and plaintiffs' brief indicates [sic] that he understands the basic requirements for summary judgment." (citing *Wheeler v. Ill. Institute of Technology*, 1999 WL 965240, at *2 n. 2 (N.D. Ill. Sept. 30, 1999))).

**Analysis**

I.  **Age Discrimination Claim**

To prove a claim of age discrimination under the ADEA, a plaintiff must either produce direct evidence of discrimination or use the indirect "burden-shifting" method. *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir. 2014). The Seventh Circuit is moving away from the "'ossified direct/indirect paradigm in favor of a simple analysis of whether a reasonable jury could infer prohibited discrimination,' and an adverse employment action based on that discrimination." *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014); *see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014) ("[I]t is time to collapse the different methods of proof into one test."). However, the Seventh Circuit has not yet mandated a particular analytical framework. *Mustafa v. Ill. Property Tax Appeal Bd.*, 67 F. Supp. 3d 988, 996 (N.D. Ill. 2014).

Here, Langreder identifies no evidence that points directly to a discriminatory reason for Freeman's actions. There is no "smoking gun" admission by any Freeman decision-maker that Langreder was forced to retire or otherwise suffer adverse employment action because of his age. *See Hutt v. AbbVie Products LLC*, 757 F.3d 687, 692 (7th Cir. 2014) (noting that the direct method requires, essentially, admissions of discrimination).

Moreover, Langreder has not offered any circumstantial evidence under the direct method. *See Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012) ("[F]undamentally the plaintiff must connect the circumstantial evidence to the

employment action such that a reasonable juror could infer the employer acted for discriminatory reasons."). While Langreder does point to scattered incidents of Freeman's disciplinary treatment of younger employees at work, *see* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 6(C)–(E), he fails to meaningfully compare the discipline meted out to the younger employees to the discipline meted out to older employees. In any event, any implicit differences in treatment appear minimal, at best, and are insufficient to support an inference of discriminatory animus. *See, e.g., id.* ¶ 6(C) (difference in suspension of two weeks). Indeed, in some of the instances identified by Langreder, the disciplinary treatment was the same. *See, e.g., id.* ¶ 6(H) (workers of several age groups not fired). Moreover, Langreder does not explain how these scattered incidents, or any specific circumstances surrounding his own treatment, would give rise to an inference of discrimination. *Cf. Hutt*, 757 F.3d at 692 (examining when circumstantial evidence of younger employees' treatment could sufficiently establish the inference). Accordingly, Langreder's claim fails under the direct method.

Under the indirect method of proof, to survive summary judgment, the plaintiff must establish a *prima facie* case for disparate treatment. *See, e.g., Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1157 (7th Cir. 2014). To establish a *prima facie* case of discriminatory termination, a Plaintiff must show: (1) he is a member of a protected class; (2) he met his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of his protected class (in this case, younger employees) were treated more

8

favorably. *See Hutt*, 757 F.3d at 693. If plaintiff is successful, the burden shifts to the defendant to provide a nondiscriminatory reason for the employment action. *Zayas*, 740 F.3d at 1157. If the defendant is able to articulate such a reason, then the plaintiff can survive a motion for summary judgment only with production of evidence that defendant's explanation is a pretext for discrimination. *Id*. The Court first analyzes the elements of Langreder's *prima facie* case.

### 1. Member of Protected Class

Neither party disputes that Langreder meets the first prong. He is over forty years of age and thus a member of the protected class under the ADEA. *See* 29 U.S.C. § 631(a); *Fleishman*, 698 F.3d at 603.

### 2. Employer's Legitimate Job Expectations

Langreder must show that he was meeting Freeman's legitimate job expectations. *Hutt*, 757 F.3d at 693. With regard to Langreder's claim that Freeman reduced his work hours over the years based on age, Freeman does not contend that Langreder had failed to meet its legitimate job expectations. Therefore, the Court finds that he was meeting Freeman's legitimate job expectations when it reduced his work hours over time.

However, with regard to Langreder's claim that, after he came out of retirement, Freeman refused to assign him work hours in Chicago based on his age, he has failed to establish a triable issue of fact regarding whether he was meeting Freeman's legitimate job expectations. The undisputed facts show that Mike Benson, Freeman's director of show site operations, placed Langreder on a do-not-

9

call list[4] because Langreder had had a verbal altercation with the Chicago foreman on his last day of work. Def.'s LR 56.1(a)(3) ¶¶ 21, 28–29; Def.'s Ex. D, Benson Dep. at 13–14 ("Q. Does Freeman hire retirees? A. For carpenters? Q. Yes. A. Occasionally, yes. Q. So what's the difference with hiring those carpenters and hiring myself? A. The difference being that they did not leave in such a manner that you did.").

### 3. An Adverse Employment Action

Langreder must also show that he "suffered an adverse employment action." *Hutt*, 757 F.3d at 693. Although neither party is clear on what adverse employment actions Langreder might have suffered, the parties' briefing suggests two possibilities: (1) Langreder's reduction in work hours over the years, and (2) his cessation of work at Freeman's Chicago location after his retirement in the first quarter of 2011. *See* Pl.'s LR 56.1(b)(3)(C) ¶ 1; Def.'s Mot. Summ. J. 8.

First, Langreder's claim that his working hours decreased from 2008 to 2010 qualifies as an adverse employment action. *See Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010) ("To be sure, a reduction in hours could be an adverse action giving rise to liability."). Langreder worked 1232.5 hours in 2008, 891.5 hours in 2009, and 729 hours in 2010. Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. A (Langreder's Work History). The reduction in Langreder's hours was substantial and likely resulted in a loss in pay, and therefore was "more disruptive than a mere inconvenience." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 712 (7th Cir. 2000); *see also Duncan v.*

---

[4] Benson testified that Langreder as well as two other employees of unknown age were on the do-not-call list. Def.'s Ex. D, Benson Dep. at 13.

*Thorek Mem'l Hosp.*, 764 F. Supp. 2d 910, 919 (N.D. Ill. 2011) (holding that a loss of $930 in hours could be an adverse employment action). Given its magnitude and monetary consequences, Langreder's loss of hours constitutes an adverse employment action sufficient for purposes of Langreder's *prima facie* case.

On the other hand, Langreder's not being assigned for work at the Chicago location after his retirement in 2011 is not an adverse employment action. As Freeman points out, Langreder himself insisted on certain conditions on any continued employment with Freeman. Langreder admits he told Freeman he would only work out-of-town and that he was retiring. *See* Def.'s Mot. Summ. J., Ex. C, Langreder Dep. at 76–77. When a plaintiff requests certain work restrictions that reduce the availability of work hours, it does not qualify as an adverse employment action. *See Hancock v. Potter*, 531 F.3d 474, 478–79 (7th Cir. 2008) ("[Plaintiff protests that her work hours were reduced, but this was simply due to the fact that there was a lack of available work that fell within her very limiting restrictions.").

If Langreder were forced to retire, that might qualify as a constructive discharge and an adverse employment action. *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001). However, "a complaining employee is expected to remain on the job while seeking redress . . . an employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged." *Id.* (internal citations and quotation marks omitted). Nothing in the record suggests that Langreder complained about his reduced hours before retiring. Thus, Langreder decided to retire without giving Freeman an opportunity to fix the

problem, and his retirement cannot constitute a constructive discharge.

Finally, Langreder also claims that he felt unsafe working at the Chicago location. The Seventh Circuit has noted that "if continued employment would compromise an employee's personal safety . . . we do not expect an employee to remain on the job while the employer tries to remedy the problem." *Boumehdi v. Plastag Holdings, L.L.C.*, 489 F.3d 781, 790 (7th Cir. 2007). But Langreder has provided no evidence indicating that staying with Freeman would have compromised his personal safety. First, while Langreder received what he describes as threatening phone calls, these calls came only *after* his retirement; so the calls cannot have contributed to his decision to retire. Def.'s Mot. Summ. J., Ex. C, Langreder Dep. at 76:19–77:4. Second, Langreder reported the phone calls to the FBI only after Freeman's human resources representative, Mary Beth Knight, asked if he had; and despite both Knight and the FBI suggesting that he do so, he never informed the police. *Id.* at 73:25–74:15; Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. N, Pl.'s Aff. Even when construed in Plaintiff's favor, the record does not support a reasonable inference that Langreder's safety would have been compromised had he remained on the job while Freeman addressed his complaint about declining hours.

In sum, of the events raised by Langreder, only the reduction in his hours from 2008 to 2010 qualifies as an adverse employment action sufficient to proceed.

### 4. Similarly Situated Employees Outside of the Protected Class

Langreder must further show that similarly situated employees outside of the protected class were treated more favorably. *Hutt*, 757 F.3d at 693. Langreder falls short of meeting this burden.

Langreder has not produced any evidence that younger employees were given more work hours as compared to their older counterparts. Ultimately, this dooms his claim. *See Hancock*, 531 F.3d at 478–79 ("[T]here is an even more clear-cut flaw in her case: she has not provided this Court . . . with a single similarly situated employee."). Therefore, Langreder does not meet his burden to establish a *prima facie* case. *See id.*; *see also Mustafa*, 67 F. Supp. 3d at 995 ("[A] plaintiff's failure to provide evidence of relevant comparators curtails a plaintiff's ability to rely upon the direct approach (particularly where the record is devoid of any other discriminatory evidence) and dooms his efforts to use the indirect approach.")

### 5. Pretext

Even if Langreder were able to establish a *prima facie* case, however, a plaintiff bringing a claim under the ADEA must show "but-for" causation; that is, Langreder must provide evidence that he would have received more hours, but for his age. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

Here, Freeman asserts that Langreder received fewer hours because, starting in 2008, the Chicago trade show industry had been adversely impacted by the recession, which resulted in fewer trade shows in Chicago overall and trade shows requiring fewer work hours. Def.'s LR 56.1(a)(3) Stmt. ¶ 17; Def.'s Ex. D, Benson

Dep. at 66–67.  In addition, the Illinois state legislature enacted laws in late 2009 or early 2010 that permitted exhibitors to set up their own booths with their own personnel, which also resulted in fewer work hours.  Def.'s LR 56.1(a)(3) Stmt. ¶ 17; Def.'s Ex. D, Benson Dep. at 67.

For his part, Langreder points to a ten-page spreadsheet of hundreds of employees that lists, by employee, their birth dates and dates of hire, in order to establish that Freeman hired 386 new carpenters during the years of the economic downturn.  *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 17, Pl.'s Ex. O.  Another spreadsheet is relied on by Freeman, with names seemingly identical to those listed on Plaintiff's spreadsheet, to support its contention that 75% of the Union carpenters it employs are over the age of 40.  See Def.'s LR 56.1(a)(3) Stmt. ¶ 9; Def.'s Ex. E.

"To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."  *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006).  Neither party has authenticated these documents.  Neither party provides any information regarding who prepared the spreadsheets, when they were prepared, how they were prepared, or what universe of employees the spreadsheets purport to show.  Even if the documents could be authenticated, however, there are some serious problems with the information they contain.  For example, employees with identical names on both spreadsheets are shown to have two different birthdates.  *Compare* Def.'s Ex. E, *with* Pl.'s Ex. O.  For example, an employee named George Adamcyk is listed as

14

being born on January 1, 1900, and as being forty years old on Defendant's Ex. E, and an employee named George Adamcyk is listed as being born on November 30, 1960, and as being fifty-three years old on Plaintiff's Ex. O. Without an affiant to explain the information contained in each spreadsheet, it is impossible to determine whether either spreadsheet is accurate. Accordingly, these spreadsheets are inadmissible. Because Langreder solely relies on an inadmissible spreadsheet to establish pretext, Langreder has offered no evidence to show that Freeman's reasons for his reduced hours were a pretext for age discrimination.

## II. Retaliation

Retaliation under the ADEA, like discrimination, may be proven through direct or indirect evidence. *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 881, 883 (7th Cir. 2014). The direct method requires that Langreder show: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two. *Id.* The indirect method requires Langreder to show that he: (1) engaged in statutorily protected activity; (2) met his employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in protected activity. *Id.*

Both methods first require that a plaintiff engaged in statutorily protected activity, which Langreder has shown: he complained that his reduction in hours was due to age discrimination. *See* Def.'s LR 56.1(a)(3) Stmt. ¶ 25. But Langreder admits this activity occurred *after* the alleged adverse employment action, the

15

reduction of hours. *See* Pl.'s LR 56.1(b)(3)(B) ¶ 25. And both the direct and the indirect method require that an individual have suffered an adverse employment action *after* engaging in protected activity. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668–69 (7th Cir. 2006).

Langreder does suggest one other protected activity: his complaint that certain Freeman workers were using drugs on site. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 26. However, his complaint about drug use would not represent statutorily protected activity under the ADEA. The ADEA provides that "it shall be unlawful for an employer to discriminate against any of his employees . . . because such an individual . . . has opposed any practice made unlawful by this section, or because such an individual . . . has participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d) (emphasis added).

What is more, to survive summary judgment, Langreder must establish a causal link between his protected activity and the adverse employment action. *Greengrass v. Int'l Monetary Sys., Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015). In the absence of an admission by the employer of discriminatory animus, which is "rare," the plaintiff can supply such a link through circumstantial evidence such as suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence that employer's proffered reason is pretextual. *Id*. Langreder has provided no such circumstantial evidence linking his complaint of age discrimination to his cessation of work hours in Freeman's Chicago location. Particularly, he has done nothing to rebut Freeman's two proffered reasons for his

16

cessation of hours: that his retirement precluded him from working at Chicago, and that his altercation with his supervisor would have stopped Freeman from rehiring him anyway.

Similarly, under the indirect method, Langreder would need to establish that Freeman's proffered reasons were a pretext for retaliation. *See Atanus v. Perry*, 520 F.3d 662, 677 (7th Cir. 2008). As discussed above, even assuming Langreder's could establish that he had satisfied Freeman's legitimate job expectations and that cessation in hours at Freeman's Chicago location after coming out of retirement could constitute an adverse employment action, Langreder has done nothing to establish that Freeman's proffered reason is a pretext for retaliation. Consequently, summary judgment must be granted for Freeman on Langreder's retaliation claim.

## Conclusion

For these reasons, the Court grants Defendant's motion for summary judgment [85]. Civil case terminated.

**SO ORDERED**  ENTER: 2/11/16

_____
**JOHN Z. LEE**
**United States District Judge**